IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| GLENN TRIBBLE | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | NO. 3-10-CV-0245-BD |
| | § | |
| MICHAEL J. ASTRUE, | § | |
| Commissioner of Social Security | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Glenn Tribble seeks judicial review of a final adverse decision of the Commissioner of Social Security pursuant to 42 U.S.C. § 405(g). For the reasons stated herein, the hearing decision is affirmed.

I.

Plaintiff alleges that he is disabled due to bipolar disorder. After his application for supplemental security income ("SSI") benefits was denied initially and on reconsideration, plaintiff requested a hearing before an administrative law judge. That hearing was held on September 21, 2009. At the time of the hearing, plaintiff was 26 years old. He has a ninth grade education and no relevant past work experience.[1] Plaintiff has not engaged in substantial gainful activity since January 16, 2008.

---

[1] Plaintiff's lack of relevant past work experience stems at least in part from the fact that he has been incarcerated for almost his entire adult life. (*See* Tr. at 23, 29-30, 586). During the brief time he was not in prison, plaintiff had several odd jobs through a temporary employment agency. (*See id.* at 22, 35, 534, 586). None of the jobs lasted longer than three months. (*Id.* at 35).

The ALJ found that plaintiff was not disabled and therefore not entitled to SSI benefits. Although the medical evidence established that plaintiff suffered from bipolar disorder, the judge concluded that the severity of that impairment did not meet or equal any impairment listed in the social security regulations. The ALJ further determined that plaintiff had the residual functional capacity to perform work at all exertional levels and, while somewhat mentally limited, retained the ability to understand and carry out simple instructions, interact with co-workers and supervisors incidental to the work performed, and adapt to a routine work environment with superficial contact with the public. Relying on the testimony of a vocational expert, the judge found that plaintiff was capable of working as a laundry worker, a sweeper/cleaner-industrial, and a cleaner -- jobs that exist in significant numbers in the national economy. Given plaintiff's age, education, and exertional capacity for all types of work, the judge determined that plaintiff was not disabled under the Medical-Vocational Guidelines. Plaintiff appealed that decision to the Appeals Council. The Council affirmed. Plaintiff then filed this action in federal district court.

II.

In his sole ground for relief, plaintiff argues that the assessment of his mental residual functional capacity is not supported by substantial evidence.

A.

Judicial review in social security cases is limited to determining whether the Commissioner's decision is supported by substantial evidence and whether the proper legal standards were used to evaluate the evidence. *See* 42 U.S.C. § 405(g); *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971); *see also Austin v. Shalala*, 994 F.2d 1170, 1174 (5th Cir. 1993). It is more

than a scintilla but less than a preponderance. *See Richardson*, 91 S.Ct. at 1427. The district court may not reweigh the evidence or substitute its judgment for that of the Commissioner, but must scrutinize the entire record to ascertain whether substantial evidence supports the hearing decision. *See Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988).

A disabled worker is entitled to monthly social security benefits if certain conditions are met. 42 U.S.C. § 423(a). The Act defines "disability" as the inability to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or last for a continued period of 12 months. *Id.* § 423(d)(1)(A); *see also Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985). The Commissioner has promulgated a five-step sequential evaluation process that must be followed in making a disability determination:

1. The hearing officer must ascertain whether the claimant is engaged in substantial gainful activity. A claimant who is working is not disabled regardless of the medical findings.

2. The hearing officer must determine whether the claimed impairment is "severe." A "severe impairment" must significantly limit the claimant's physical or mental ability to do basic work activities. This determination must be made solely on the basis of the medical evidence.

3. The hearing officer must decide if the impairment meets or equals in severity certain impairments described in Appendix 1 of the regulations. This determination is made using only medical evidence.

4. If the claimant has a "severe impairment" covered by the regulations, the hearing officer must determine whether the claimant can perform his or her past work despite any limitations.

5. If the claimant does not have the residual functional capacity to perform past work, the hearing officer must decide whether the claimant can perform any other gainful and substantial work in the economy. This determination is made on the

> basis of the claimant's age, education, work experience, and residual functional capacity.

*See generally*, 20 C.F.R. § 404.1520(b)-(f). The claimant has the initial burden of establishing a disability in the first four steps of this analysis. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5, 107 S.Ct. 2287, 2294 n.5, 96 L.Ed.2d 119 (1987). The burden then shifts to the Commissioner to show that the claimant is capable of performing other work in the national economy. *Id.* A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *See Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

In reviewing the propriety of a decision that a claimant is not disabled, the court's function is to ascertain whether the record as a whole contains substantial evidence to support the Commissioner's final decision. The court weighs four elements to determine whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) subjective evidence of pain and disability; and (4) the claimant's age, education, and work history. *See Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995), *citing Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991). The ALJ has a duty to fully and fairly develop the facts relating to a claim for disability benefits. *See Ripley*, 67 F.3d at 557. If the ALJ does not satisfy this duty, the resulting decision is not substantially justified. *Id.* However, procedural perfection is not required. The court will reverse an administrative ruling only if the claimant establishes prejudice. *See Smith v. Chater*, 962 F.Supp. 980, 984 (N.D. Tex. 1997).

B.

Plaintiff argues that the nature and extent of his mental limitations preclude all meaningful work activity. In support of this claim, plaintiff relies principally on a psychological evaluation conducted by Joni Henderson of ABC Behavioral Health ("ABC") on January 24, 2008. (*See* Tr. at

155, 521-31). According to Henderson, plaintiff suffers from anger, paranoia, and delusional behavior, which prevent him from interacting successfully with others and preclude his ability to maintain employment. (*Id.* at 521-22, 525). At the time of the evaluation, plaintiff had a GAF score of 40. (*Id.* at 521). His high GAF score for the previous year was 45. (*Id.*).[2] The record also contains a psychiatric review prepared by Dr. Mark Schade, a state agency psychologist, who noted that plaintiff had "marked" limitations in maintaining social functioning. (*Id.* at 545, 555). However, Dr. Schade concluded that there was insufficient evidence to establish disability. (*Id.* at 545).

After considering the evidence, the ALJ determined that plaintiff was limited by his poor social skills and inability to follow complex commands, but retained the ability to work despite his bipolar disorder. (*Id.* at 12). In reaching that conclusion, the ALJ explained:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairment could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.
>
> The undersigned has considered the opinion of the state agency physicians. Although there are differences in degree, the undersigned agrees with the state agency assessment that the claimant is not disabled.
>
> While it is noted that the claimant has a history of bipolar disorder, there is minimal evidence to substantiate this as debilitating. The record does not support functional limitation that would prevent the claimant from performing all substantial gainful work activity. The evidence suggests that the claimant's limitations in his daily activities

---

[2] GAF, or global assessment of functioning, is a standardized measure of psychological, social, and occupational functioning used in assessing a patient's mental health. *See Boyd v. Apfel*, 239 F.3d 698, 700 n.2 (5th Cir. 2001). The GAF scale ranges from a high of 100 to a low of 1. A GAF score of 40 indicates major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood. *See* American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV-TR") at 32 (4th ed. 1994). A GAF score of 45 indicates serious symptoms or impairment in social, occupational, or school functioning. *See id.* at 32.

> be by choice rather than due to a debilitating physical health impairment. The claimant testified that he has difficulty finding employment secondary to his criminal record. He also indicated that he has continued to use drugs since his release from prison. The claimant stated he has worked for temporary agencies with his longest employment lasting only three months due to his decision not to work ... Because the claimant retains the ability to perform work activities, he/she must be found not disabled.

(*Id.* at 12-13) (internal citations omitted).

The ALJ's conclusion is supported by substantial evidence. As an initial matter, the court notes that the evaluation on which plaintiff relies was prepared by a case manager, not by a licensed psychologist or a physician. A case manager is not an acceptable medical source for purposes of determining disability status. *See Hoelck v. Astrue*, 261 Fed.Appx. 683, 686, 2008 WL 64705 at *2 (5th Cir. Jan. 7, 2008), *citing* 20 C.F.R. §§ 404.1513 & 416.913(a) (GAF score assessed by non-physician at initiation of treatment did not come from an acceptable medical source). Moreover, plaintiff routinely exhibited reasonably normal behavior throughout his treatment at ABC. Evaluations conducted on three separate days in January 2008 reflect that plaintiff was well groomed, alert, typically had a normal rate and tone of speech, was frequently euthymic, was not suicidal or homicidal, and had intact judgment and insight despite some paranoia. (*See* Tr. at 535, 536, 538). In June and July 2009, plaintiff was well-groomed, had fair or intact insight and judgment, spoke at a normal rate, and was able to concentrate and pay attention normally. (*See id.* at 578, 583). While plaintiff reported having homicidal thoughts, the focus of his anger was an inability to find work and frustration that he only received two months of food stamps and had to wait two months for his disability hearing. (*See id.* at 579). In August 2009, an examiner again noted that plaintiff was well-groomed with a normal rate and tone of speech, intact attention and concentration, intact memory, a euthymic mood, a well-organized thought process, no problems with

thought content, no suicidal or homicidal thoughts, and intact judgment and insight. (*See id.* at 580). Plaintiff's treating physician, Dr. Kathryn Judd, opined that his disability was not permanent and was expected to last 6 months or less. (*Id.* at 582). These records alone constitute substantial evidence to support the ALJ's disability determination. *See, e.g. Zimmerman v. Astrue*, 288 Fed.Appx. 931, 936-37, 2008 WL 3471852 at *4-5 (5th Cir. Aug. 13, 2008) (upholding ALJ's determination that plaintiff not disabled despite low GAF score where impairments were described in mild terms and non-examining medical expert testified that plaintiff was "reasonably well stabilized" by medication, did not have major depression, and was only mildly restricted in daily living, social functioning, and concentration).

In addition, Dr. Camille Hemlock, a medical expert, testified that there was insufficient evidence in the record to support a diagnosis of bipolar disorder. (*See* Tr. at 47-48). Of particular significance was the fact that plaintiff had no history of psychiatric hospitalizations, did not experience any manic or hypomanic episodes, and used drugs during the relevant assessment period. (*See id.*). Although plaintiff had some antisocial traits that necessitated limitations in his workplace interactions, Dr. Hemlock could not find that a mental illness prevented him from working. (*See id.*). That conclusion is amply supported by hundreds of pages of records documenting plaintiff's medical history during his nine years in the Arkansas prison system. Despite submitting more than 140 grievances and receiving more than 70 medical examinations between 2001 and 2007, plaintiff neither requested nor underwent treatment for mental illness, other than treatment for depression in 1998 and 2000. (*See generally, id.* at 180-517). The fact that plaintiff was asymptomatic for more than five years until approximately two years before his disability hearing belies the claim that his life-long mental disorder prevents him from working.

Indeed, plaintiff's own words support the conclusion that he is not disabled. Among the statements made by plaintiff to mental health providers are that he could not apply for more than two jobs due to the cost of bus fare, (*see id.* at 581), and that his criminal background made it difficult to get hired. (*See id.* at 592). When asked by the ALJ why he quit working after obtaining jobs through a temporary employment agency, plaintiff responded:

> Well, one of them because I felt that [his employer] had beat me on my money. The one I was telling you about that. I had worked that whole day and I had came in kind of late. I worked that whole day though, and they didn't pay me for that day and they had made me upset so I just left.

(*Id.* at 35). Plaintiff's ability to respond coherently and appropriately during his lengthy testimony also casts doubt on the accuracy of his low GAF score. *See Olguin v. Barnhart*, 31 Fed. Appx. 838, 838, 2002 WL 261461 at *1 (5th Cir. Jan. 31, 2002) (substantial evidence supported ALJ's determination that plaintiff's social and mental impairment was "slight" despite GAF score of 49 where, *inter alia*, judge had an opportunity to view plaintiff's demeanor and interactions with others during the administrative hearing). In sum, there is more than enough evidence in the record to support the determination that plaintiff has the residual functional capacity, with some mental limitations, to perform gainful and substantial work in the national economy.

## C.

To the extent plaintiff faults the ALJ for failing to order a consultative examination of his intellectual functioning, (*see* Plf. MSJ Br. at 8), that claim is without merit. Although the ALJ has a duty to "fully and fairly" develop the record to ensure that his decision is based on sufficient facts, the duty to order a consultative examination arises only when such an evaluation is necessary to enable the ALJ to make a disability determination. *See Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996). "A consultative evaluation becomes 'necessary' only when the claimant presents evidence

sufficient to raise a suspicion concerning a non-exertional impairment." *Id., citing Jones v. Bowen*, 829 F.2d 524, 526 (5th Cir. 1987). Plaintiff has failed to raise a "suspicion" concerning any impairment in intellectual functioning. Even assuming that plaintiff attended special education classes in math and reading, a fact not reflected in his disability report, (*see* Tr. at 21-22, 147), there is no evidence that he suffers from a deficiency in these areas. While in prison, plaintiff was able to read and write well enough to file a myriad of grievances on issues such a dental cleaning, poor vision, skin conditions, a sore throat, and numerous basketball injuries. (*See id.* at 185, 190, 195, 201, 203, 205, 207, 209, 212, 216, 218, 221, 223, 230, 234, 238, 241, 245, 249, 252, 255, 258, 260, 262, 263, 264, 266, 267, 269, 270, 272, 275, 279, 281, 284, 285, 293-95, 298-99, 302-03, 305, 310, 314, 317, 322, 325, 329-30, 332, 336, 341, 343, 345, 350-52, 354-55, 357-62, 367, 369-73, 375-76, 378-79, 381-82, 384-88, 390-92, 400-03, 405, 407-15, 417-21, 423-33, 467-69, 473-74, 476, 478, 480-83, 485-87, 489-91, 493-94, 499-501). Despite imperfect grammar and spelling, all the grievances are comprehensible, and many contain complex sentences. (*See id.*). Other evidence in the record shows that plaintiff walked or traveled by bus to appointments by himself, was able to take care of his own personal needs, and was described by ABC staff as "intelligent." (*See id.* at 152, 154, 521). At the administrative hearing, plaintiff testified that he writes "pretty good" and can count money. (*Id.* at 22, 31). Plaintiff also testified that he spends time writing poetry about his thoughts and feelings -- a pastime not typically enjoyed by someone with intellectual deficits. (*See id.* at 45).

Moreover, the ALJ took plaintiff's alleged deficiencies into account during his examination of the vocational expert. The judge asked the vocational expert whether jobs exist for a hypothetical individual of plaintiff's age and experience with a ninth grade education that included "limited special ed," and who could understand and carry out simple instructions, interact with co-workers and supervisors incidental to the work performed, and adapt to a routine work environment with

superficial contact with the public. (*See id.* at 48-49). The vocational expert identified the jobs of laundry worker, sweeper/cleaner-industrial, and cleaner. (*Id.* at 49). Thus, plaintiff cannot show how he was prejudiced by the failure to order a consultative examination of his intellectual functioning.

## **CONCLUSION**

The hearing decision is affirmed in all respects.

SO ORDERED.

DATED: March 31, 2011.

JEFF KAPLAN
UNITED STATES MAGISTRATE JUDGE